Slip Op. 19-146

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE NAVIGATOR COMPANY, S.A., | |
| Plaintiff, | |
| PACKAGING CORPORATION OF AMERICA, ET AL., | |
| Consolidated Plaintiffs, | |
| and | |
| DOMTAR CORPORATION, | Before: Mark A. Barnett, Judge |
| | Consol. Court No. 18-00192 |
| Plaintiff-Intervenor, | |
| | **PUBLIC VERSION** |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| PACKAGING CORPORATION OF AMERICA, ET AL., | |
| Defendant-Intervenors. | |

## <u>OPINION AND ORDER</u>

[Remanding the final results and amended final results of the first administrative review of the antidumping duty order on certain uncoated paper from Portugal for reconsideration of the brokerage and handling charge selected as facts available and the decision to make an adverse inference in that selection.]

Dated: November 22, 2019

<u>Jonathan M. Zielinski</u>, Cassidy Levy Kent (USA) LLP, of Washington, DC, argued for Plaintiff/Defendant-Intervenor The Navigator Company, S.A.  With him on the brief were <u>Thomas M. Beline</u> and <u>James E. Ransdell</u>.

Geert De Prest, Schagrin Associates, of Washington, DC, argued for Plaintiff/Defendant-Intervenor Packaging Corporation of America, et al.  With him on the brief were Terence P. Stewart, William A. Fennell, and Lane S. Hurewitz, Stewart and Stewart, of Washington, DC.

Stephen J. Orava and Daniel L. Schneiderman, King & Spalding LLP, of Washington, DC, for Plaintiff-Intervenor Domtar Corporation.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Tara K. Hogan, Assistant Director, and Michael D. Snyder, Trial Attorney.  Of counsel was Mykhaylo A. Gryzlov and Brendan Saslow, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Barnett, Judge: This consolidated action is before the court on two motions for judgment on the agency record challenging the final results and amended final results of the U.S. Department of Commerce's ("Commerce" or the "agency") first administrative review of the antidumping duty order on certain uncoated paper from Portugal.[1]  *See Certain Uncoated Paper From Portugal*, 83 Fed. Reg. 39,982 (Dep't Commerce Aug. 13, 2018) (final results of antidumping duty admin. review; 2015–2017) ("*Final Results*"), ECF No. 33-2, and accompanying Issues and Decision Mem., A-471-807 (Aug. 6, 2018) ("I&D Mem."), ECF No. 33-3; *Certain Uncoated Paper From Portugal*, 83 Fed. Reg. 52,810 (Dep't Commerce Oct. 18, 2018) ([am.] final results of antidumping duty admin. review; 2015–2017) ("*Amended Final Results*"), ECF No. 33-1, and accompanying Confidential Ministerial Error Mem. (Oct. 9, 2018) ("Min. Error Mem."), ECF No. 65-1.

---

[1] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 33-4, and a Confidential Administrative Record ("CR"), ECF No. 33-5, 20-3.  Parties submitted joint appendices containing record documents cited in their briefs.  *See* Public J.A. ("PJA"), ECF No. 73; Confidential J.A. ("CJA"), ECF No. 74. The court references the confidential version of the relevant record documents, unless otherwise specified.

Consolidated Plaintiffs, Packaging Corporation of America and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"), and Plaintiff-Intervenor Domtar Corporation (collectively, "Petitioners") challenge Commerce's decision to amend the *Final Results* to correct an alleged ministerial error.  Specifically, Petitioners argue that in adopting the *Amended Final Results*, Commerce: (1) departed from its practice of using data initially rejected as unreliable when selecting the facts available with an adverse inference, (2) altered the substance of the *Final Results* rather than correcting a ministerial error, and (3) chose an insufficiently adverse value for Navigator's U.S. brokerage expenses.  *See* Rule 56.2 Mot. of Consol. Pls.' Packaging Corp. of America and USW and Pl.-Int. Domtar Corp. for J. on the Agency R., ECF No. 47, and Confidential Mem. of Law in Supp. of Rule 56.2 Mot. of Consol. Pls. Packaging Corp. of America and USW and Pl.-Int. Domtar Corp. for J. on the Agency R. ("Pet'rs' Mem."), ECF No. 48.

Plaintiff, The Navigator Company, S.A. ("Navigator"), challenges the *Final Results*, arguing that: (1) there is no gap in the record which would allow Commerce to resort to facts available pursuant to 19 U.S.C. § 1677e(a); (2) Commerce failed to comply with the requirements of 19 U.S.C. § 1677m(d) by not providing Navigator with sufficient opportunity to explain any deficiencies in its response; and (3) Commerce had no basis for making an adverse inference pursuant to 19 U.S.C. § 1677e(b).  The Navigator Company's Mot. for J. on the Agency R. ("Navigator's Mot."), ECF No. 50, and Mem. of Points of Law and Fact in Supp. of the Rule 56.2 Mot. for J. on the Agency R. filed by Pl., The Navigator Company ("Navigator's Mem."), ECF No. 50.

For the reasons discussed below, the court remands the *Final Results* and

*Amended Final Results* for Commerce to reconsider its use of an adverse inference and

selection of facts available for Navigator's allocated U.S. brokerage and handling

expenses.

JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c).

The court will uphold an agency determination that is supported by substantial evidence

and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

BACKGROUND

On March 3, 2016, Commerce published an antidumping duty order on uncoated

paper from Portugal.  *Certain Uncoated Paper From Australia, Brazil, Indonesia, the*

*People's Republic of China, and Portugal*, 81 Fed. Reg. 11,174 (Dep't Commerce Mar.

3, 2016) (am. final affirmative antidumping determinations and antidumping duty

orders).  On March 31, 2017, Navigator requested an administrative review of its

imports for the period of review ("POR") of August 26, 2015 through February 28, 2017

("POR").  Req. for Admin. Review of Antidumping Duty Order (Mar. 31, 2017), PR 1,

---

[2] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are generally to the 2012 edition.  However, the Trade Preferences Extension Act ("TPEA"), Pub. L. No. 114–27, § 502, 129 Stat. 362, 383–84 (2015), made several amendments to the antidumping and countervailing duty laws. Section 502 of the TPEA amended 19 U.S.C. § 1677e.  *See* TPEA § 502.  The TPEA amendments affect all antidumping duty determinations made on or after August 6, 2015.  *See Dates of Application of Amendments to the Antidumping and Countervailing Duty Laws Made by the Trade Preferences Extension Act of 2015*, 80 Fed. Reg. 46,793 (Dep't Commerce Aug. 6, 2015).  Accordingly, all references to 19 U.S.C. § 1677e are to the amended version of the statute.

PJA Tab 1 .  Commerce initiated this review on May 9, 2017.  *Initiation of Antidumping and Countervailing Duty Admin. Reviews*, 82 Fed. Reg. 21,513 (Dep't Commerce May 9, 2017).  Commerce published the preliminary results of review on April 6, 2018, preliminarily calculating a zero percent dumping margin for Navigator.  *Uncoated Paper From Portugal*, 83 Fed. Reg. 14,844 (Dep't Commerce Apr. 6, 2018) (prelim. results of antidumping duty admin. review; 2015–2017) ("*Preliminary Results*").

On August 13, 2018, Commerce published the *Final Results*, pursuant to which the agency found that certain U.S. brokerage and handling expenses, as reported by Navigator, were anomalous and effectively increased the net price for U.S. sales of subject merchandise during the POR.  *See Final Results*, 83 Fed. Reg. at 39,983; I&D Mem. at 6–8.  Commerce explained that Navigator "reported U.S. brokerage and handling in two fields, USBROKU and USBROK2U, where the amounts reported in USBROKU were actual expenses and the amounts reported in USBROK2U were allocated."  I&D Mem. at 7 & n.36 (citation omitted).  Regarding the allocated expenses reported in USBROK2U (or "allocated brokerage expenses"), Commerce found that Navigator "failed to cooperate to the best of its ability because it failed to provide the necessary information demonstrating that its allocation methodology . . . [did] not cause inaccuracies or distortions."  *Id*. at 8.  Commerce selected the highest reported allocated brokerage expense as adverse facts available ("AFA") for Navigator's allocated brokerage and handling expenses.  *Id*. at 8 & n.43 (citing Final Results Analysis Mem. for The Navigator Company, S.A. (Aug. 6, 2018) ("Navigator Final Analysis Mem."), CR 310, CJA Tab 8).  In the *Final Results*, Navigator's weighted-average dumping margin increased to 37.34 percent.  83 Fed. Reg. at 39,983.

Also on August 13, 2018, Navigator timely submitted a ministerial error allegation in which it argued, in relevant part, that Commerce made a ministerial error when it selected the highest allocated brokerage expense to use as partial AFA "because it mathematically resulted in a larger brokerage expense than Commerce otherwise found to be a reliable total brokerage expense" and resulted in an unrealistically high total brokerage expense.  Ministerial Error Allegation (Aug. 13, 2018) at 8, CR 320, CJA Tab 9.

On August 27, 2018, Navigator initiated this action challenging the *Final Results*. Summons, ECF No. 1; Compl., ECF No. 6.  After consultation with interested parties, Commerce requested leave to consider Navigator's ministerial error allegations.  Def.'s Consent Mot. for Leave to Consider Ministerial Error Allegation and, if Necessary, to Publish Am. Final Results or Correction Notice, ECF No. 13.  The court granted such leave on September 7, 2018.  Order (Sept. 7, 2018), ECF No. 14.

On October 9, 2018, Commerce issued a memorandum addressing the alleged ministerial errors.  Min. Error Mem.; *see also Amended Final Results*, 83 Fed. Reg. 52,810.  Commerce agreed that it had made a ministerial error by selecting Navigator's highest allocated brokerage expense as adverse facts available and, instead, selected the highest transaction specific U.S. brokerage expense (reported in USBROKU) to replace Navigator's allocated brokerage expense.  Min. Error Mem. at 6, 7.  This change reduced Navigator's weighted-average dumping margin from 37.34 to 1.75 percent.  *Id*. at 6; Am. Final Determinations Calculations for The Navigator Company, S.A. (Oct. 9, 2018) ("Amended Calc. Mem.") at 2, CR 323, CJA Tab 12.

Commerce issued its *Amended Final Results* on October 18, 2018.  *Amended Final Results*, 83 Fed. Reg. at 52,810.  On October 22, 2018, Consolidated Plaintiffs initiated a separate action challenging the *Amended Final Results*.  *Packaging Corporation of America, et al. v. United States, et al.*, No. 1:18-cv-00217, Summons, ECF No. 1, Compl., ECF No. 7 (CIT Oct. 22, 2018).  On November 1, 2018, the court consolidated the actions under lead court number 18-00192.  Docket Order, ECF No. 34.

DISCUSSION

While Navigator challenges Commerce's determination to use adverse facts available and its selection of adverse facts available in the *Final Results*, subsequent to the issuance of the *Amended Final Results*, Navigator has stated that it would waive its right to pursue its challenge if Petitioners do not prevail in their challenge to the *Amended Final Results*.  See Navigator's Mot. at 3.  In light of the contingent nature of Navigator's challenge, the court will first consider Petitioners' challenge to the *Amended Final Results*.

**I. Petitioners' Challenges to the *Amended Final Results***

**A. Legal Framework**

Pursuant to 19 U.S.C. § 1675(h), Commerce is authorized to correct ministerial errors in its final determinations and required to establish procedures for correction of such errors.[3]  *See also Zenith Elecs. Corp. v. United States*, 884 F.2d 556, 560 (Fed.

---

[3] Section 1675(h) provides:

> The administering authority shall establish procedures for the correction
> of ministerial errors in final determinations within a reasonable time
> after the determinations are issued under this section. Such procedures

Cir. 1989) ("A number of cases have recognized the authority of an administrative

agency to correct inadvertent, ministerial errors." (collecting cases)).   Both statute and

regulation define "ministerial error" as "an error in addition, subtraction, or other

arithmetic function, clerical error resulting from inaccurate copying, duplication, or the

like, and any other type of unintentional error which the [agency] considers ministerial."

19 U.S.C. § 1675(h); *cf.* 19 C.F.R. § 351.224(f).   "Clerical errors are by their nature not

errors in judgment but mere inadvertencies."   *NTN Bearing Corp. v. United States*, 74

F.3d 1204, 1208 (Fed. Cir. 1995); *see also SGL Carbon LLC v. United States*, 36 CIT

264, 275 , 819 F. Supp. 2d 1352, 1363 (2012) (finding that ministerial errors are not

those "resulting from ill-considered judgment or wayward discretion") (citation omitted).

This court has repeatedly recognized the existence of a legal distinction between

ministerial and non-ministerial errors.[4]

   "Commerce is given fairly broad discretion to determine which types of

unintentional error to regard as ministerial."   *CEMEX, S.A. v. United States*, 19 CIT 587,

593 (1995) (citing 19 U.S.C. § 1675(h)).   However, Commerce's determination is not

without limits and is subject to judicial review.   *See Alloy Piping Prod., Inc. v. Kanzen*

*Tetsu Sdn. Bhd.*, 334 F.3d 1284, 1292 (Fed. Cir. 2003) (noting that Commerce has

---

       shall ensure opportunity for interested parties to present their views
       regarding any such errors.
19 U.S.C. § 1675(h)

[4] *See, e.g., Peer Bearing Co. v. United States,* 23 CIT 454, 458, 57 F. Supp. 2d 1200, 1204 (1999) ("[T]he allegation of faulty judgment inherently falls outside the purview of a ministerial error."); *Shinhan Diamond Indus. Co., Ltd. v. United States*, 34 CIT 227, 231 (2010) ("[A] ministerial error 'encompasses only errors mechanical in nature, apparent on the record, and not involving an error of substantive judgment,' or includes only 'mindless and mechanistic mistakes [and] minor shifting of facts.'") (citation omitted) (second alteration in original).

discretion to determine when an alleged error is ministerial, but Commerce's

determinations thereto are "subject to judicial review"); *Hor Liang Indus. Corp. v. United

States*, 42 CIT ___, ___, 337 F. Supp. 3d 1310, 1321 (2018) (same).

### B. Commerce's Determinations

As stated above, for the *Final Results*, Commerce selected the highest reported

allocated brokerage expense reported in USBROK2U as AFA.[5]  *See* I&D Mem. at 8.

Commerce explained that Navigator's transaction specific brokerage expenses were not

appropriate to use as AFA for Navigator's allocated brokerage expenses because

"these observations with transaction specific . . . [expenses] represent a [limited] portion

of [Navigator's] total . . . observations and are not sold pursuant to the same sales

process as those observations with an allocated U.S. brokerage and handling expense

reported."[6]  Navigator Final Analysis Mem. at 6.  For that reason, Commerce found that

those observations for which Navigator reported actual expenses were not

representative of the sales for which Navigator allocated its expenses.  *Id.*

In the Ministerial Error Memorandum, Commerce stated that it had erred in using

Navigator's highest allocated brokerage expenses as AFA because the agency had

---

[5] Specifically, Commerce selected [[      ]] U.S. dollars per kilogram as adverse facts
available to use for allocated brokerage expenses.  Navigator Final Analysis Mem. at 6.
[6] In its section C questionnaire response, Navigator explained that "[t]he expenses
reported in field USBROKU are direct in nature and apply to [[

                                        ]]"  Navigator's Sec. C Questionnaire Resp. (June
15, 2017) ("Navigator CQR") at 33, PR 25, CR 22, 28, 29, 44, CJA Tab 2.  For
expenses reported in USBROK2U, "[[                          ]] and, [thus], the
traceability is lost."  *Id.* at 34.  Accordingly, for sales reported in USBROK2U, Navigator
allocated its brokerage expenses "based on the total quantity of individual product
codes purchased by individual customers."  *Id.*

found that information to be unreliable.  Min. Error Mem. at 6 & n.33 (referring to its

finding that Navigator had failed to show that its allocation methodology did "not cause

inaccuracies or distortions") (quoting I&D Mem. at 8).  Commerce stated that it did "not

know the full universe of inaccuracies or distortions associated with [the highest

allocated brokerage] expense," and its selection of that value as AFA was, therefore, an

"unintentional ministerial error."  *Id.* at 6.  To correct this error, Commerce selected

Navigator's highest transaction specific expense as AFA.[7]  *Id.*

### C. Parties' Contentions

Petitioners contend that Commerce's decision to change its choice of AFA value

in the *Amended Final Results* was not the correction of a ministerial error, but a

substantive change that exceeded the scope of the court's Order granting permission to

consider the ministerial error allegation.  Pet'rs' Mem. at 19-20.

The Government contends that Commerce corrected a ministerial error because

it initially selected Navigator's highest reported allocated brokerage expense as AFA,

after it had determined that the allocated data provided by Navigator was unreliable.

Confidential Def.'s Opp'n to Pl.'s Mot. for J. Upon the Agency R. ("Gov't's Resp."), at 16,

ECF No. 57.  The Government argues that Commerce has broad discretion to

determine what type of errors qualify as "ministerial."  *Id.* at 20.

Navigator supports the Government's contention that Commerce acted within its

discretion by treating its selection of the AFA value as a ministerial error.  Confidential

The Navigator Company's Resp. in. Opp'n To Consol. Pls.' and Pl.-Int.'s Mot. for J. on

---

[7] Specifically, Commerce selected [[        ]] U.S. dollars per kilogram in the *Amended Final Results* to use as adverse facts available for allocated brokerage expenses in USBROK2U.  Amended Calc. Mem. at 3.

the Agency R. ("Navigator's Resp.") at 6–11, ECF No. 61.  Navigator points to the

legislative history of 19 U.S.C. § 1675(h) to show that Congress intended to grant

Commerce a wide degree of discretion in deciding which types of errors are

"ministerial."  *Id.* at 7–8.

### D. Commerce Made a Substantive Modification to the *Final Results*

Commerce has broad, but not unbounded, discretion to determine which types of

errors are ministerial.  *See, e.g.*, *Hor Liang Indus.*, 337 F. Supp. 3d at 1321; *SGL*

*Carbon*, 36 CIT at 273, 819 F. Supp. 2d at 1362.  In this case, Commerce exceeded its

authority when it claimed to correct a ministerial error when revising its selection of AFA

for the allocated brokerage.  Ministerial errors "are by their nature not errors in judgment

but merely inadvertencies."  *NTN Bearing,* 74 F.3d at 1207.

The Government cites several cases supporting Commerce's discretion to

identify and correct ministerial errors, including *Peer Bearing ,* 23 CIT 454, 57 F. Supp.

2d 1200.  *See* Gov't's Resp. at 20.  While Commerce does have significant discretion,

the facts underlying *Peer Bearing* support the conclusion that Commerce exceeded its

discretion here.[8]  In *Peer Bearing*, the court held that Commerce made a ministerial

error when it "accidentally used an unskilled labor rate of 46.6 Rupees per hour and a

---

[8] Navigator errs in suggesting that the court must give *Chevron* deference to Commerce's ministerial error finding.  Navigator's Resp. at 7–8 (citing *Chevron*, 467 U.S. at 842–43); *see also id.* at 10 ("Commerce's Amended Final Results set forth a reasonable construction of the statute . . . .").  Whether Commerce corrected a ministerial error does not concern the agency's legal interpretation of the statute it administers.  *Cf. Chevron*, 467 U.S. at 842–43.  The Parties do not dispute the proper meaning of the term "ministerial error" or that it does not include errors of judgment.  *See* Gov't's Resp. at 16; *cf.* Navigator's Resp. at 9.  Rather, the issue before the court is whether Commerce's identification of the error as ministerial comported with the uncontroverted statutory and regulatory definition and that finding is not subject to *Chevron* deference.

skilled labor rate of 25.42 Rupees per hour instead of the reverse."  23 CIT at 456, 57 F.

Supp. 2d at 1202–03.  The court then granted the Government's request for a remand

to correct the "*inadvertent* reversal of the skilled and unskilled labor rates in its

calculations."  *Id.* at 456, 57 F. Supp. 2d at 1203 (emphasis added).

In contrast, here, Commerce did not *inadvertently* utilize one value when it

intended to use another.  In the Final Analysis Memorandum for Navigator, Commerce

provided a reasoned explanation as to why it rejected the use of the transaction specific

brokerage expenses as AFA.  Navigator Final Analysis Mem. at 5–6.  Commerce

explained that those transaction specific expenses represented a "[limited] portion of

Navigator's observations."  *Id*. at 6.  Commerce further explained that those

observations were not sold pursuant to the same "sales process as those observations

with allocated U.S. brokerage and handling reported."  *Id*.  Commerce concluded that

the transaction specific expenses were not "representative to be considered as a plug

for Navigator's allocated U.S. brokerage and handling expenses."  *Id*.  Thus,

Commerce's selection of AFA for the *Final Results* was the result of its reasoning and

consideration of Navigator's reporting methodology.  To the extent this was error, it was

not a "ministerial" error.  *See QVD Food Co., Ltd v. United States*, 34 CIT 1166, 1179–

80, 721 F. Supp. 2d 1311, 1322 (2010), *aff'd* 658 F.3d 1318 (Fed. Cir. 2011) (plaintiff

was wrong to assert that Commerce could make changes to its deliberate treatment of

certain expenses in its calculations pursuant to the agency's authority to correct

ministerial errors).

The court notes that other avenues were available to the Government if

Commerce wished to revisit its selection of AFA in the *Final Results*.  As explained in

*SKF USA v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001), Commerce may, among other things, request a remand, without confessing error, in order to reconsider its position on an issue.  *Id.*  Such a remand would be appropriate if the agency's concern is "substantial and legitimate," but "may be refused if the agency's request is frivolous or in bad faith."  *Id.*  As in the case of a request for remand to consider a ministerial error allegation, *SKF*-type requests for remand are often granted in order to conserve judicial and other resources so that the Government is defending, and the plaintiff is challenging, the agency's discretion as purposefully exercised by the agency.

Whether the remand request is based on the consideration of a ministerial error or is based on an agency desire to reconsider its position is not merely an exercise in semantics.  In the case of a remand to reconsider its position, Commerce may adopt a new line of reasoning not previously adopted (or perhaps even previously rejected), provided that the choice accords with law and is based on substantial evidence on the record.  *Cf. SKF*, 254 F.3d at 1029 ("[Commerce] may request a remand because it believes that its original decision is incorrect on the merits and wishes to change the result.").  In the case of a remand to consider a ministerial error allegation and subsequent identification of a ministerial error, however, the agency's substantive reasoning as provided in the original determination should continue to support the amended determination.  When distinct reasoning is necessary to support the amended determination, it is less likely that the error was ministerial in nature.  *Cf. QVD Food Co.*, 34 CIT at 1178–79, 721 F. Supp. 2d at 1322.

This conundrum is precisely where Commerce placed itself with its *Amended Final Results*.  Commerce claimed to have inadvertently used one value instead of

another in its *Final Results*, *see* Ministerial Error Mem. at 7; however, the reasoning

supplied in those *Final Results* addressed why the initially rejected value is an

inappropriate choice as AFA.  Even if the court were inclined to disregard the

"ministerial error" label used to justify the amended choice of AFA, the court could not

affirm the agency's selection of the transaction specific brokerage expense because the

only substantive reasoning before the court is in the original *Final Results*, explaining

why the transaction specific value is an inappropriate choice for AFA.

Therefore, the court must remand the *Amended Final Results* for reconsideration

by Commerce in accordance with this opinion.  Because the court is remanding the

*Amended Final Results*, the court need not consider Petitioners' other reasons for

objecting to Commerce's choice of AFA in the *Amended Final Results*.

**II. Navigator's Challenges to the *Final Results***

**A. Legal Framework**

When "necessary information is not available on the record," or an interested

party "withholds information" requested by Commerce," "fails to provide" requested

information by the submission deadlines, "significantly impedes a proceeding," or

provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i),

Commerce "shall . . . use the facts otherwise available."  19 U.S.C. § 1677e(a).

Commerce's authority to use the facts otherwise available is subject to 19 U.S.C.

§ 1677m(d).  *Id*.  Pursuant to § 1677m(d), if Commerce determines that a respondent

has not complied with a request for information, it must promptly inform that respondent

of the nature of the deficiency and, to the extent practicable in light of statutory

deadlines, provide that respondent "an opportunity to remedy or explain the deficiency."
*Id*.

If Commerce determines that the party "has failed to cooperate by not acting to
the best of its ability to comply with a request for information," Commerce "may use an
inference that is adverse to the interests of that party in selecting from among the facts
otherwise available."  19 U.S.C. § 1677e(b).  "Compliance with the 'best of its ability'
standard is determined by assessing whether a respondent has put forth its maximum
effort to provide Commerce with full and complete answers to all inquiries in an
investigation."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir.
2003).

## B. Commerce's Determination

Commerce's initial questionnaire to Navigator explained that the agency would
"accept allocated price adjustments and expenses only if [Navigator] [could]
demonstrate that the allocation is calculated on as specific a basis as is feasible (*e.g.*,
on a customer-specific basis, product-specific basis, and/or monthly-specific basis, etc.)
and is not unreasonably distortive."  Req. for Information (The Navigator Company S.A.)
(May 9, 2017) at G-9, PR 3, PJA Tab 3.  Commerce requested that, in doing so,
Navigator "provide a complete explanation of: (1) how the price adjustments or
expenses are recorded in [Navigator's] records; (2) why [Navigator] cannot report the
price adjustment or expense on a more specific basis using [its] records; and (3) why
[Navigator's] allocation methodology does not cause inaccuracies or distortions."  *Id*.[9]

---

[9] Pursuant to Commerce's regulations, "[a]ny party seeking to report an expense or a
price adjustment on an allocated basis must demonstrate to the [agency's] satisfaction

Commerce further directed Navigator to provide "the allocation formula and supporting worksheets."  *Id.*

As previously noted, in its section C questionnaire response, Navigator reported certain per-unit brokerage and handling expenses incurred in the United States on an allocated basis.  Navigator CQR at 33–34.  In a supplemental questionnaire, Commerce asked Navigator to explain these reported expenses, particularly with regard to the number of transactions for which the allocated expense was negative.[10] Navigator's Suppl. Sec. C Questionnaire Resp. (Sept. 20, 2017) ("Navigator Suppl. CQR"), at 52, CR 142, 146, 171-177, CJA Tab 4.  Navigator explained that the "negative expenses are the result of the allocation methodology" owing to the fact that there were "situations during the POR in which adjustments were made from previous months, effectively lowering the cost."  *Id*.  Navigator further reported that "all costs accounted for during the POR pertaining to subject merchandise [had] been captured and reported."  *Id.* at 52–53.  Navigator provided a sample calculation and screenshot "indicating the source of the negative expense."  *Id*. at 53.

Commerce further inquired whether the negative expenses represent revenues or credits and, if so, for Navigator to explain why they were not separately reported.  *Id*. Commerce also asked Navigator to confirm that the revenues or credits were associated with POR sales of subject merchandise and to explain why it is appropriate

---

that the allocation is calculated on as specific a basis as is feasible, and must explain why the allocation methodology used does not cause inaccuracies or distortions."  19 C.F.R. § 351.401(g)(2).

[10] Certain terms were bracketed and protected as business proprietary information during the administrative proceeding but released publicly in Navigator's moving brief. Such terms are included here without brackets as appropriate.

to include them in Navigator's allocated brokerage expense.  *Id*.  Navigator responded

that "[t]he negative expenses . . . are not revenues or credits but rather the result of

expense adjustments from previous months."  *Id*.

 In its administrative case brief, Petitioners raised concerns regarding Navigator's

allocated U.S. brokerage expenses and urged Commerce to reject the information and

select the highest allocated expense as AFA.  Pet'rs' Case Br. and Hr'g Req. (May 7,

2018) at 3–9, CR 307, CJA Tab 6.  In the Final Results, Commerce agreed with

Petitioners and determined to use AFA because of Navigator's failure "to demonstrate

that its allocation methodology for its U.S. brokerage and handling expenses is not

distortive."  Navigator Final Analysis Mem. at 5; *see also* I&D Mem. at 7–8.

 Commerce found that the expenses for some of the sales "are associated with

sales outside of the POR."  I&D Mem. at 7; *see also* Ministerial Error Mem. at 5.[11]  Thus,

because Navigator included adjustments made during the POR related to non-POR

sales, Commerce found Navigator's allocation to be distortive meriting an adverse

inference when selecting from among the facts available to use as Navigator's allocated

brokerage expenses.  *Id*.

### C. Parties' Contentions

 Navigator raises three challenges to Commerce's application of AFA to its

allocated brokerage expenses.  First, Navigator contends that there was no gap in the

administrative record which Commerce could fill with AFA pursuant to 19 U.S.C.

---

[11] In the Ministerial Error Memorandum, Commerce explained that "Navigator reported [[ ]] transactions with negative U.S. brokerage and handling expenses in the first month of the POR," which "necessarily must be associated with sales that occurred outside the POR."  Ministerial Error Mem. at 4–5.

§ 1677e(a).  Navigator's Mem. at 14–18.  Because Navigator's total brokerage

expenses reported in USBROK2U tie to its accounting system, which in turn ties to its

audited financial statements, Navigator argues that its data was verifiable  *Id.* at 14–15.

Second, Navigator contends that Commerce failed to provide adequate

notification of any deficiencies in its questionnaire responses pursuant to 19 U.S.C.

§ 1677m(d).  *Id.* at 18–21.  Navigator argues that Commerce asked for further

explanation of certain brokerage expenses only if those values represented revenues or

credits, to which Navigator responded that they did not.  *Id.* at 18.

Third, Navigator contends that Commerce's decision to apply an adverse

inference was improper because Navigator cooperated to the best of its ability and fully

answered the questions Commerce asked.  *Id.* at 21–23; The Navigator Company's

Reply to Def.'s and Def.-Ints.' Opp'n to The Navigator Company's Mot. for J. Upon the

Agency R. ("Navigator's Reply"), at 4–5, ECF No. 70.  Navigator contends that, at most,

Commerce should have used facts otherwise available without an adverse inference.

Navigator's Mem. at 22.

The Government asserts that Navigator failed to demonstrate that its allocation

methodology did not cause inaccuracies or distortions pursuant to 19 C.F.R.

§ 351.401(g)(1), and, therefore, a gap existed in the record to be filled with facts

otherwise available.  Gov't's Resp. at 7–14.  The Government further contends that,

pursuant to 19 U.S.C. § 1677m(d), Commerce provided an opportunity for Navigator to

demonstrate the accuracy of its methodology through a supplemental questionnaire,

and Navigator again failed to address Commerce's concerns.  *Id.* at 11–12.  Because

Navigator failed to address this deficiency, the Government argues that Navigator failed

to cooperate to the best of its ability pursuant to 19 U.S.C. § 1677e(b).  *Id.* at 14.

Petitioners support the Government's arguments in favor of using AFA for

Navigator's allocated brokerage expenses.  Confidential Resp. Br. of Packaging Corp.

of America, USW, and Domtar Corp. ("Pet'rs' Resp.") at 1, ECF No. 59.  However,

Petitioners also contend that Navigator does not allocate brokerage expenses on a

month-to-month basis, and has not demonstrated that these expenses are tied verifiably

to its accounting system.  *Id.* at 3–5.

### D. Commerce Correctly Resorted to Facts Available, However, Its Use of an Adverse Inference Was Unjustified

*1. Navigator's Reporting Methodology*

Substantial evidence supports Commerce's determination to resort to facts

available to fill a gap in the record.  Navigator's argument confuses the issue of

cooperation, discussed below, with the standard for using allocated data, which is

provided in 19 C.F.R. § 351.401(g)(2).  That regulation requires that Navigator

demonstrate to Commerce's satisfaction that its allocation methodology does not cause

inaccuracies or distortions.  19 C.F.R. § 351.401(g)(2).  Here, Commerce reasonably

found, based on Navigator's submissions, that Navigator's methodology included

adjustments related to non-POR sales and, therefore, caused inaccuracies or

distortions.  *See* I&D Mem. at 8.

In fact, Navigator now appears to concede that its allocation methodology could

cause some distortions in its allocated reporting both at the beginning and end of the

period of review:

> Indeed, while Commerce's Issues and Decision Memorandum isolates allocated
> brokerage expenses for the first month of the POR and asserts they are [[

>        ]], *allocated brokerage expenses for the final month of the POR could have
> been* [[          ]]*, given that* [[                              ]] *could be accounted for
> after the POR had closed*.

Navigator's Mem. at 22 (emphasis added).  This explanation confirms Commerce's

conclusion that adjustments for non-POR sales are being included in and impacting

Navigator's calculation of U.S. brokerage expenses.  *See* I&D Mem. at 8.  Navigator

clearly indicates that the allocated brokerage expenses in the first month [[          ]]

the actual expense because of adjustments relating to pre-POR expenses and in the

last month of the POR, the allocation may [[          ]] the actual expense because of

adjustments made after the POR.  These facts are consistent with the administrative

record and Commerce's factual findings based on that record: Navigator's allocation

methodology both includes some adjustments associated with non-POR expenses and

excludes some adjustments made after the POR.[12]  Navigator Suppl. CQR at 52–53.

Thus, substantial evidence supports Commerce's decision to resort to facts available to

determine Navigator's allocated brokerage expenses.

   *2. Relevance of U.S.C. § 1677m(d)*

        Navigator argues that Commerce's use of the phrase revenues or credits in

question 40(e) of the supplemental section C questionnaire "was a clear directive to

provide further explanation *only if* the answer to Commerce's [initial] question was that

the negative expenses *were* revenues or credits," and, thus, Commerce failed to

provide Navigator with the opportunity to explain or remedy any deficiency regarding the

possibility that its negative expenses were related to non-POR sales.  Navigator's Mem.

---

[12] Navigator argues that there is no evidence that its allocation methodology causes
inaccuracies or distortions.  *See* Navigator's Reply at 10.  However, 19 C.F.R.
§ 351.401(g)(2) places the burden on respondents to demonstrate that their
methodologies *do not cause* distortions or inaccuracies, not the other way around.

at 20.  According to Navigator, had Commerce instead referred to the negative expenses as "apparently anomalous expenses" as it did later in the Issues and Decision Memorandum, Navigator would have been required to provide additional explanation. *Id.* (citing I&D Mem. at 7).

As the respondent, Navigator had the burden to provide "all of the requested information and create an adequate record."  *ABB Inc. v. United States*, 42 CIT ___, ___, 355 F. Supp. 3d 1206, 1222 (2018), *recons. den.*, 43 CIT ___, ___, 375 F. Supp. 3d 1348 (2019) (collecting cases).  Moreover, as just discussed, the regulations expressly require Navigator, when reporting an expense on an allocated basis, to demonstrate that the allocation does not cause inaccuracies or distortions.  19 C.F.R. § 351.401(g)(2).  Navigator failed to do so.

Commerce asked Navigator multiple follow-up questions.  Those questions addressed Navigator's reporting of allocated brokerage expenses, sought a detailed narrative description of how the expense was calculated, and requested an explanation why numerous observations included negative expenses and an identification of the types of services represented by the negative expenses.  These questions were in addition to the one question in which Commerce asked about the possibility of those expenses representing revenues or credits.  *See* Navigator Suppl. CQR at 52–53. Read in context, it is clear that Commerce was providing Navigator with an opportunity to explain further the basis for reporting this allocated expense, particularly with respect to the many observations involving negative expenses.  In any case, Commerce's conclusion that Navigator's allocation of brokerage expenses was distortive was based on Navigator's data, as reported, including the indications that the allocations were

related to pre-POR sales and excluded post-POR adjustments.  In light of both the

regulatory burden on Navigator to establish that its allocations are non-distortive and

Commerce's supplemental questionnaire addressing Navigator's reporting of this

expense, Commerce has met its statutory burden to provide Navigator with an

opportunity to remedy its explanation of this allocated expense.  *See* 19 U.S.C.

§ 1677m(d).

   *3. Commerce's Use of an Adverse Inference*

   If Commerce determines that a party "has failed to cooperate by not acting to the

best of its ability to comply with a request for information," it "may use an inference that

is adverse to the interests of that party in selecting from among the facts otherwise

available."  19 U.S.C. § 1677e(b).  Whether a party has complied to the "best of its

ability" depends on whether "a respondent has put forth its maximum effort to provide

Commerce with full and complete answers to all inquiries in an investigation."  *Nippon

Steel*, 337 F.3d at 1382.

   Commerce made an adverse inference in this case because it determined that

Navigator "failed to provide the necessary information demonstrating that its allocation

methodology for U.S. brokerage and handling expenses does not cause inaccuracies or

distortions."  I&D Mem. at 8.  While Commerce took issue with Navigator's responses to

the supplemental questionnaire, *id*. at 7–8, it did not identify any lack of cooperation by

Navigator.  Rather, the agency applied AFA because Navigator's submissions failed to

demonstrate that its allocation methodology was not distortive.  *Id*. at 8; *see also*

Navigator Final Analysis Mem. at 5.  In other words, Commerce's stated basis for

making an adverse inference was the very same basis that justified Commerce's use of

the facts available—that Navigator failed to establish that its allocation was non-

distortive.[13]  Such a failure to demonstrate non-distortion by an otherwise active

participant in the proceeding, by itself, does not support the use of an adverse

inference.  *See Nippon Steel*, 337 F.3d at 1381–82 (finding that section 19 U.S.C. §

1677e does not focus on a party's failure to provide requested information but a party's

failure to cooperate to the best of its ability); *Nat'l Nail Corp. v. United States*, 45 CIT

___, ___, 390 F. Supp. 3d 1356, 1373 (2019) ("An adverse inference, on the other

hand, may only be drawn where the reason underlying the absence of necessary

information was the respondent's failure to cooperate to the best of its ability, that is,

where the respondent failed to do the maximum it [was] able to do.") (alteration in

original) (citation and internal quotation marks omitted).

    Here, Commerce was able to analyze Navigator's questionnaire responses and

determined that the allocated expenses, as reported, were, in fact, distortive.  I&D Mem.

at 8; Navigator Final Analysis Mem. at 5.  Navigator's responses were not incomplete,

and Navigator did not withhold information.  While Commerce's findings permitted it to

disregard the allocated data and turn to the facts otherwise available, *see* 19 C.F.R.

§ 351.401(g)(2), more is required for the agency to use *adverse* facts available.

Therefore, Commerce's use of an adverse inference is not supported by substantial

evidence.  On remand, Commerce must either select a neutral value to use as facts

---

[13] Commerce's conflation of the requirements for facts available and adverse facts
available is reflected in the Government's response brief, in which it argues that
Navigator failed to cooperate to the best of its ability "[b]ecause *necessary information
was not on the record*, in the form of actual U.S. brokerage and handling expenses for
the entries reported as allocated, and because Navigator *failed to provide the requested
information*."  Gov't's Resp. at 9 (emphasis added).

available or provide an explanation addressing how Navigator failed to act to the best of
its ability that is distinct from Commerce's basis for using facts available.

CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby:

**ORDERED** that Commerce's *Final Results* and *Amended Final Results* are
remanded to Commerce; and it is further

**ORDERED** that, on remand, Commerce shall reconsider both its selection of the
value used as Navigator's allocated brokerage expense and its decision to use an
adverse inference in making that selection, consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand results on or before February 20,
2020; and it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule
56.2(h); and it is further

**ORDERED** that any comments or responsive comments must not exceed 5,000
words.

/s/        Mark A. Barnett____
Mark A. Barnett, Judge

Dated: <u>November 22, 2019</u>
        New York, New York